**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **SCOTT TITUS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11-50254** |
| | ) | |
| **MICHAEL SMITH, JR., et al.,** | ) | **Adversary Proceeding No. 12-05041** |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM DECISION**

At Harrisonburg in said District this 3rd day of December, 2012:

This matter is before the court on the Defendants,' Michael Smith, Jr. and Home Depot U.S.A., Incorporated, (collectively, the "Defendants") Motion for Summary Judgment. On September 19, 2012, the Court held a hearing on the Motion. After considering the evidence provided and the arguments of the parties, the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Scott Titus (the "Plaintiff") filed this action in the Circuit Court of the County of Jefferson, West Virginia on October 31, 2011 against Defendants. Plaintiff filed a voluntary petition under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code" or the "Code") in the Western District of Virginia on March 1, 2011 and subsequently converted his case to Chapter 13 on October 12, 2011. Plaintiff did not disclose this cause of action or any claim against Defendants in either his Chapter 7 or Chapter 13 bankruptcy schedules.

Defendants first learned of Plaintiff's bankruptcy during his deposition on February

1

17, 2012, nearly one year after he filed bankruptcy. Yet, Plaintiff did not disclose this cause of

action as an asset of his bankruptcy estate until three months later on May 30, 2012, when he filed

an amended Schedule B.[1] On the amended Schedule B, Plaintiff listed the cause of action as

having a value of $"0.00." Six weeks later, on July 6, 2012, this Court entered an order confirming

the amended Chapter 13 plan. The Confirmation Order specifically states that the "Trustee retains

Good Faith, Chapter 7, and Disposable Income Objections pending resolution of litigation with

Home Depot, [and] debtor must notify the Trustee immediately of any settlement or resolution of

the litigation."

     After learning of the bankruptcy filing, Defendants sought to remove the state court

action to the Northern District of West Virginia. On June 15, 2012, the Northern District of West

Virginia transferred Plaintiff's case to the Western District of Virginia citing the interests of justice

and judicial economy. The District Court for the Western District of Virginia referred the matter to

this Court on July 23, 2012 noting that this matter is related to the administration of Plaintiff's

bankruptcy estate.

     The case at hand involves a detention of Plaintiff and his two small children by

Defendant Smith in Defendant Home Depot's Ranson, West Virginia store. The following facts

are relevant to the analysis for this summary judgment motion and are taken from the parties'

briefs and oral argument.   At approximately 2:00 p.m. on July 11, 2010, Plaintiff entered

Defendant Home Depot's store with a faucet he had purchased earlier that day, intending to return

it. After finding a suitable replacement, Plaintiff went to the return desk to exchange the previously

---

1     Official Form B6 "Schedule B - Personal Property" requires a debtor to disclose all interests in personal
property including "all contingent and unliquidated claims of every nature" (#21); and "other personal property of any
kind not already listed" (#35).   Instructions on the face of the Official Form direct the debtor to "give estimated
value" of the items.

purchased faucet for the new faucet. While standing at the return desk, Plaintiff was approached by

Defendant Smith, who asked Plaintiff to accompany him to the back because "they had had some

problems with people not returning all components." Plaintiff's Exhibit 3 at Interrogatory 4, *Titus*

*v. Smith, et al*., No. 12-05041 (W.D.Va. Bankr. Aug. 11, 2012) ECF No. 13.

After entering Defendant Smith's office and while another of Defendant Home

Depot's employees blocked the exit, Defendant Smith accused Plaintiff of return fraud and

informed Plaintiff that the police had been called. Defendant Smith also informed Plaintiff that he

would be arrested, that he should provide for his children's care, and that he witnessed Plaintiff

enter the store without the item, pull an item off the shelf, and then attempt to return it. As it turned

out, Defendant Smith had not witnessed Plaintiff enter the store. Plaintiff's Exhibit 4 at 6, *Titus v.*

*Smith, et al*., No. 12-05041 (W.D.Va. Bankr. Aug. 11, 2012) ECF No. 13.

During the detention, Defendant Smith's demeanor changed from "polite" and

"calm" to "abrasive," "loud," and "intense" and he "was getting pretty close to [Plaintiff], not

touching [him] but just getting up towards [him]." Defendant's Exhibit A at 10-11, *Titus v. Smith,*

*et al*., No. 12-05041 (W.D.Va. Bankr. Aug. 11, 2012) ECF No. 5. Defendant Smith urged Plaintiff

to sign a confession. Plaintiff's Exhibit 1 at 2, *Titus v. Smith, et al*., No. 12-05041 (W.D.Va. Bankr.

Aug. 11, 2012) ECF No. 13. Plaintiff refused to sign the confession several times and each time

Defendant Smith became more aggressive. *Id.* Defendant's children witnessed the entire

encounter, and the oldest child began crying. The detention lasted approximately twenty to

twenty-five minutes. Plaintiff's Exhibit 3 at Interrogatory 4, *Titus,* No. 12-05041 ECF No. 13.

The police arrived and witnessed this exchange. After arriving, the police requested

to view the tape showing Plaintiff entering the store without the item. Plaintiff's Exhibit 1 at 2,

*Titus,* No. 12-05041 ECF No. 13. Defendant Smith refused, informing them that the tape could not

3

be accessed at the moment. *Id.* Defendant Smith first told officers that he had witnessed Plaintiff

enter the store without a previously purchased item, but later told police that he was on his lunch

break when he observed Plaintiff in the faucet isle without a faucet breaking into store packages.

*Id.* Later that night, Defendant Smith dropped off a report and video with local authorities and the

video showed Plaintiff enter the store with the faucet.[2] *Id.* A representative for Defendant Home

Depot contacted Plaintiff on the night of July 11, 2010 to inform the Plaintiff that Defendant was

not pressing charges. Plaintiff's Exhibit 3 at Interrogatory 4, *Titus,* No. 12-05041 ECF No. 13. The

representative, however, did not apologize for the situation and even informed the Plaintiff that

Defendant Home Depot still believed Plaintiff was guilty of wrongdoing, but there was not enough

evidence to move forward. Transcript of Oral Argument at 39-40, *Titus v. Smith, et al.*, No.

12-05041 (W.D.Va. Bankr. Sept. 19, 2012).

Plaintiff's wife later attempted to secure a copy of the surveillance video from

Defendant Home Depot in July 2010. Plaintiff's Exhibit 3 at Interrogatory 4, *Titus,* No. 12-05041

ECF No. 13. Defendant Home Depot informed her that she would only receive a copy via

subpoena and that a copy had already been provided to local authorities. *Id.* Local authorities,

however, did not receive a copy from Defendant Home Depot until November 2010 and only after

repeated requests to Defendant, its staff, and its lawyers. Plaintiff's Exhibit 1 at 2, *Titus,* No.

12-05041 ECF No. 13. In the end, the copy authorities did receive was not a complete copy and

had portions missing. *Id.*

Based on Defendant Smith's actions and inaction on July 11, 2010, local authorities

criminally charged Defendant Smith with Falsely Reporting an Emergency Situation. As Officer

---

2    There appears to be some factual difference between the "tape" delivered by Defendant Smith and the
"surveillance tape" that was delivered much later by Defendant Home Depot. Plaintiff and local authorities treat them
as different items.

Henderson's report states:

> Mr. Smith fabricated on how and where he observed Mr. Titus and his young children. From Mr. Smith's incorrect actions, he caused the police … to respond to the scene of a crime, when in fact no crime was committed due to Mr. Smith's incorrect observation tactics, which if he would have been correct. [*sic*] He would have realized that the item in question was brought into the store by Mr. Titus and family and not that Mr. Titus was attempting to commit refund fraud.

Plaintiff's Exhibit 1 at 2, *Titus,* No. 12-05041 ECF No. 13. In addition to Officer Henderson's report, Office Tharp informed Plaintiff that Defendant Smith had been caught in a lie during his description of the way things transpired. Plaintiff's Exhibit 3 at Interrogatory 4, *Titus,* No. 12-05041 ECF No. 13.

Defendant Home Depot's loss prevention policies required Defendant Smith to witness a suspect enter the store before an apprehension for return fraud could be made. Plaintiff's Exhibit 4 at 6.

## CONCLUSIONS OF LAW

This matter is not a core proceeding, but it is related to the bankruptcy case. *Bowning v. Levy,* 283 F.3d 761, 773 (6th Cir. 2002) (a claim is a core proceeding if it either invokes a substantive right created by federal bankruptcy law or could not exist outside of bankruptcy). The plaintiff is currently operating under Chapter 13 bankruptcy in this Court. Plaintiff's recovery, if any, is subject to review by the Bankruptcy Court to determine the extent to which it must be realized for Plaintiff's creditors. The recovery has the potential to enhance the bankruptcy estate. This Court has jurisdiction over this "non-core" proceeding pursuant to 28 U.S.C. § 157(c)(1), and authority to submit proposed findings of fact and conclusions of law to the District Court, unless the parties consent to the entry of a final order by the bankruptcy judge. 28 U.S.C. § 157(c). Defendants have not so consented, but have asked this Court to submit proposed findings of fact

and conclusions of law on their Rule 56(a) Summary Judgment Motion. Pursuant to Fed. R. Bankr.

P. 9033, the Court makes the following proposed findings of fact and conclusions of law.

In determining whether to recommend that Defendants' Motion be granted or

denied, the Court must apply the summary judgment standard of review articulated by the Fourth

Circuit:

> Summary judgment should be granted if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is no genuine issue
> as to any material fact and that the movant is entitled to judgment as a matter of law.
> Facts are material when they might affect the outcome of the case, and a genuine
> issue exists when the evidence would allow a reasonable jury to return a verdict for
> the nonmoving party. The moving party is entitled to judgment as a matter of law
> when the nonmoving party fails to make an adequate showing on an essential
> element for which it has the burden of proof at trial. In ruling on a motion for
> summary judgment, the nonmoving party's evidence is to be believed, and all
> justifiable inferences are to be drawn in that party's favor. To overcome a motion
> for summary judgment, however, the nonmoving party may not rely merely on
> allegations or denials in its own pleading but must set out specific facts showing a
> genuine issue for trial.

*The News and Observer Publishing Co. v. Raleigh-Durham Airport*, 597 F.3d 570, 576 (4th Cir.

2010) (internal citations and quotations omitted) (summarizing Supreme Court precedents). With

this standard in mind, the Court makes the following conclusions of law regarding Defendants'

judicial estoppel and West Virginia tort law arguments.

## **Judicial Estoppel**

Defendants argue that Plaintiff is judicially estopped from pursuing his cause of

action because Plaintiff repeatedly failed to disclose the action in the bankruptcy, and when he did

disclose this action, he valued it at $0.00. The United States Supreme Court explained the doctrine

of judicial estoppel in 2001:[3]

---

[3]     Neither party has briefed whether federal or state law applies on the issue of judicial estoppel. This is a
somewhat thorny issue. The Fourth Circuit has ruled that federal estoppel law applies even in diversity jurisdiction

Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.   This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment, Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion.

*New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotations and citations omitted).

Judicial estoppel is an equitable doctrine. *Id.* at 750. Judicial estoppel is appropriate when:   (1) the party sought to be estopped is seeking to adopt a position clearly inconsistent with a position taken in prior proceedings; (2) the prior inconsistent position was accepted by the court; and (3) the party attempting to adopt the inconsistent position would derive an unfair advantage.[4] *Id.* at 750-51. The inconsistent position must be on a factual issue. *Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir. 1996). Judicial acceptance of a previous position "means only that the first court has adopted the position urged by the party as part of a final disposition." *Id.* at 224-25 (internal quotations and citations omitted). Judicial estoppel seeks to prevent the "perception that either the first or the second court was misled." *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1249 (2010) (internal quotations and citations omitted). "Absent success in a prior proceeding, a party's later inconsistent

---

cases. *See Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1168 (4th Cir. 1982), *but see Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C. Cir. 1980) (holding that *Erie* applies to judicial estoppel in cases of diversity jurisdiction). In this case, the original removal was made based on diversity jurisdiction.

4       It is worth noting that both parties cite a four part test from *Folio v. City of Clarksburg*, 134 F. 3d 1211, 1217 (4th Cir. 1998): (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently.   It is only the fourth prong that appears to differ from the Supreme Court's formulation as the Fourth Circuit's formulation requires intentional action, rather than an unfair advantage.

position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *New Hampshire v. Maine*, 532 U.S. at 750-51.

Defendants argue that the Court previously accepted Plaintiff's factual assertion that his cause of action did not exist because of its omission from Plaintiff's bankruptcy filings prior to May 30, 2012. In the alternative, Defendants argue that Plaintiff's valuing of this cause of action at $0.00 is a factual position accepted by the Court.

Plaintiff did make factual assertions to the Court in his bankruptcy schedules. These included the assertion that no pending lawsuits existed because the lawsuit was not listed in Plaintiff's schedules until May 30, 2012. This means that the schedules supporting all of Plaintiff's proposed but unconfirmed plans contained a factual assertion that no law suit existed. However, the schedules that supported Plaintiff's proposed, but unconfirmed plans, did not form the foundation for a final disposition by this Court. The assertions in those schedules were not "accepted" or "adopted" by the Court. Therefore, those factual assertions, although inconsistent with Plaintiff's current position, cannot judicially estop Plaintiff in his present cause of action.

A debtor's valuation of a cause of action in the schedules that support a confirmed plan would normally give rise to judicial estoppel. In this case, however, there is evidence that the Court did not "accept" or "adopt" the valuation based on the language of the confirmation order. The confirmation order states: "[the] Trustee retains Good Faith, Chapter 7, and Disposable Income Objections pending resolution of litigation with Home Depot, [and] debtor must notify the Trustee immediately of any settlement or resolution of the litigation." This language indicates the Court understood that the $0.00 assertion was a temporary valuation based on the uncertainty of success in litigation of this suit. Any subsequent change in the value of the suit based on a resolution must be reported to the Trustee under the directive of the confirmation order. The

8

reporting requirement eliminates the perception that the Court has been misled in either the first or second instance, and addresses the concern about judicial integrity. *See Whitten v. Fred's Incorporated,* 601 F.3d 231, 241 (4th Cir. 2010) (debtor who reported cause of action to the trustee who then abandoned the asset, did not act in bad faith and was not found to conceal asset that later rendered value).   In this case, any recovery on the underlying cause of action must immediately be reported to the Trustee and will become the basis for plan modification as appropriate depending on the terms, nature and character of the recovery.   The debtor Plaintiff has a duty to report and is, based on the condition imposed by the confirmation order, prevented from raising preclusion challenges to the Trustee's request to modify should he do so based on the recovery.

Although Debtor's omission of this cause of action from his schedules supporting his first four proposed plans is quite troubling, it was not accepted by the Bankruptcy Court as a part of a final adjudication and, therefore, cannot support judicial estoppel of the Plaintiff's action. Similarly, the valuation of the underlying cause of action at $0.00 is inappropriate, inaccurate and wrong,[5] yet based on the language in the confirmation order, cannot form the basis for judicial estoppel. The Court finds that Defendants are not entitled to summary judgment on the grounds of judicial estoppel.

## West Virginia Tort Law

Both parties have assumed for purposes of their respective motions that West Virginia state law applies and governs this dispute. Although the Court concludes that the assumption is correct, it is not an easy assumption to make given the procedural posture of this

---

[5]      According to the Trial Transcript, six days before disclosing the lawsuit in the bankruptcy schedules, the debtor Plaintiff had received and rejected a settlement offer of $15,000 for the claim and further countered with a $150,000 settlement offer. Transcript of Oral Argument at 6, *Titus,* No. 12-05041. The Court cannot reconcile the debtor's valuation of "$0.00" to the Bankruptcy Court with his valuation of   $150,000 in the course of settlement negotiations.

9

case: the case was initially filed in West Virginia state court before being removed to the Northern

District of West Virginia, transferred to the Western District of Virginia, and referred to this Court.

When a case is transferred from one district court to another district court in a

different state, the transferee court is required to apply the substantive law that would have been

applied by the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Volvo Const.*

*Equip. North America, Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004). As the

transferee court, this Court is required to apply the substantive law that would have been applied

by the Northern District of West Virginia, the transferor court. Under *Erie Railroad* and its

progeny, the District Court for the Northern District of West Virginia would have been required to

apply the substantive law of the forum state, West Virginia. *Erie Railroad v. Tompkins*, 304 U.S.

64, 78 (1938); *Tobacco Technology, Inc. v. Taiga Intern, N.V.*, 388 Fed.Appx. 362, 368 (4th Cir.

2010). The substantive state law of West Virginia includes the state's choice-of-law rules. *Klaxon*

*Co. v. Stentor Electic Mfg. Co.*, 313 U.S. 487, 496 (1941); *Colgan Air, Inc. v. Raytheon Aircraft*

*Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Therefore, this Court is required to apply the substantive

state law of West Virginia, including its choice-of-law rules.

The action before the Court is a state-law tort action between diverse parties. As

such, the Court must apply West Virginia choice-of-law rules to determine what law governs the

claims. West Virginia is a First Restatement jurisdiction and applies the law of the place of the

injury. *West Virginia v. Madden*, 216 W.Va. 443, 450-51 (W.Va. 2004). Under the facts of the

case, the place of the alleged injury is West Virginia. As the place of the alleged injury is West

Virginia, the applicable West Virginia choice-of-law rules require this Court to apply West

Virginia tort law in making this report and recommendation.

<u>False Imprisonment</u>

Defendants' Motion does not allege that Plaintiff's evidence fails to make out a

colorable claim.[6] Rather, Defendants argue that they are entitled to summary judgment on

Plaintiff's false imprisonment claim because Defendant Smith's actions were lawful and protected

under West Virginia Code Section 61-3A-4 (the "Merchant Exception"). West Virginia's

Merchant Exception provides:

> An act of shoplifting as defined herein, is hereby declared to constitute a breach of
> peace and any owner of merchandise, his agent or employee, or any
> law-enforcement officer who has reasonable ground to believe that a person has
> committed shoplifting, may detain such person in a reasonable manner and for a
> reasonable length of time not to exceed thirty minutes, for the purpose of
> investigating whether or not such person has committed or attempted to commit
> shoplifting. Such reasonable detention shall not constitute an arrest nor shall it
> render the owner of merchandise, his agent or employee, liable to the person
> detained.

W.Va. Code § 61-3A-4.

Defendants' reliance on this affirmative defense changes the standard of review the

Court must use to determine whether to recommend granting Defendants' Motion.

> Where, as here, the movant seeks summary judgment on an affirmative defense, it
> must conclusively establish all essential elements of that defense. When the
> defendant has produced sufficient evidence in support of its affirmative defense,
> the burden of production shifts to the plaintiff to come forward with specific facts
> showing that there is a genuine issue for trial. However, where the movant fails to
> fulfill its initial burden of providing admissible evidence of the material facts
> entitling it to summary judgment, summary judgment must be denied, even if no
> opposing evidentiary matter is presented, for the non-movant is not required to
> rebut an insufficient showing.

*Ray Communications, Inc. v. Clear Channel Communications, Inc.*, 673 F.3d 294, 300 (4th Cir.

2012) (internal citations and quotations omitted). In light of this standard, the Court must first

---

6        "In the present case, Defendants, for the purposes of this motion only, will concede that a detention of
plaintiff occurred." Defendant's Rule 56(a) Motion for Summary Judgment at 14, *Titus v. Smith, et al.*, No. 12-05041
(W.D.Va. Bankr. Aug. 11, 2012) ECF No. 4.

determine what the elements of the Merchant Exception are and whether Defendants have

conclusively established them. It is not until after Defendants have met their burden that the Court

is required to consider whether there is a genuine issue for trial.

For a detention to be reasonable within the meaning of the Merchant Exception,

there must be a reasonable ground to believe that shoplifting has occurred and the detention must

be conducted in a reasonable manner, for a reasonable amount of time, and for the purpose of

investigation. W.Va. Code § 61-3A-4. Although the statute provides the elements necessary for

finding that a reasonable detention has occurred, it generally fails to define what the elements

entail. The only insight the statute provides is detentions in excess of thirty minutes are *per se*

unreasonable and, therefore, outside the scope of the Merchant Exception's protection. *Id.*

With respect to the affirmative defense to Plaintiff's claim of false imprisonment,

Defendants carry the initial burden of conclusively establishing the essential elements of the

Merchant Exception. Based on the Court's understanding of the burden-shifting scheme outlined

by the Fourth Circuit in *Ray Communications*, this inquiry should be confined to the Defendants'

Motion and Supporting Memorandum of Law (the "Memorandum") because "the non-movant is

not required to rebut an insufficient showing." *Ray Communications*, 673 F.3d at 300. Therefore, if

Defendants' Motion and Memorandum do not conclusively establish the essential elements of

their affirmative defense, then the Court must deny Defendants' Motion.

The Court concludes that Defendants have failed to carry their burden of

conclusively establishing all of the elements of the affirmative defense. Defendants argue that

based on the Merchant Exception, "if Defendant had 'reasonable grounds to suspect' that

shoplifting occurred and the detention was less than 30 minutes, then there can be no liability as a

matter of law." Defendants' Supporting Memorandum of Law at 15, *Titus v. Smith, et al.*, No.

12

12-05041 (W.D.Va. Bankr. Aug. 11, 2012) ECF No. 5. The Court disagrees with the Defendants'

summation of the legal standard underlying the Merchant Exception. The affirmative defense

provided by the Merchant Exception only applies to reasonable detentions as defined by the

statute. W.Va. Code §61-3A-4 ("Such reasonable detention shall not constitute an arrest nor shall

it render the [individual] liable to the person detained."). In order to qualify as a reasonable

detention, the Merchant Exception requires:   1) the individual conducting the detention to have

reasonable grounds to believe that shoplifting has occurred; 2) the merchant must detain the

suspected individual in a reasonable manner; 3) the detention must be for a reasonable amount of

time, and 4) the detention must be for the purpose of investigation. W.Va. Code § 61-3A-4. When

framed properly, it is evident that there are at least two essential elements of the affirmative

defense not considered by Defendants' summation of the law, specifically that the detention was

conducted in a reasonable manner and that it was for the purpose of investigation.

       The Defendants' Memorandum outlines the facts they believe support a finding

that reasonable grounds for suspicion existed and that the detention was less than thirty minutes.

Defendants' Supporting Memorandum of Law at 15-17, *Titus,* No. 12-05041 ECF No. 5.

Assuming that such facts are persuasive, Defendants have at best established two of the four

elements of the Merchant Exception.[7] Defendants have failed to establish that the detention was

conducted in a reasonable manner and for the purpose of investigation. As Defendants have only

recognized two of the four elements of the Merchant Exception's affirmative defense, the Court

---

7     As to the reasonable amount of time, Defendants have shown that the detention was not per se unreasonable because it did not exceed the thirty minute bar provided for in the statute. Defendants appear, at least in their written materials and in oral argument, to assert that a detention lasting less than thirty minutes is *per se* reasonable. For the reasons stated previously, the Court disagrees with the Defendants' reading of the statute. The Merchant Exception allows an individual to "detain [another] … for a reasonable length of time not to exceed thirty minutes." W.Va. Code §61-3A-4. The thirty minute limitation does not define what is reasonable under the statute, but rather what the drafters believed to be beyond the bounds of reasonableness covered by the Merchant Exception. As such, the thirty minute limitation determines what is *per se* unreasonable, not what is *per se* reasonable.

finds that Defendants have not conclusively established all essential elements of their affirmative defense. Therefore, Defendants have failed to carry their burden and their Motion should be denied as it relates to Plaintiff's false imprisonment claim.

Assuming the Court was to consider Defendants' Reply to Plaintiff's Response (the "Reply") in addition to Defendants' Motion and Memorandum, the Court would still conclude Defendants have failed to carry their burden. In order to conclusively establish the essential elements of their affirmative defense, Defendants must produce credible evidence that would entitle them to a directed verdict if not controverted at trial. *Ray Communications*, 673 F.3d at 300.

Defendants' Memorandum addresses the facts they believe support the elements of reasonable grounds and reasonable time. As to reasonable grounds, Defendants provide that when Defendant Smith first saw Plaintiff, Plaintiff was en route to the faucet department and did not have a faucet in his possession. Defendants' Supporting Memorandum of Law at 15, *Titus,* No. 12-05041 ECF No. 5. Defendant Smith then observed Plaintiff rip open two or more faucet boxes, put the opened boxes in his cart, and head to the return desk. *Id.* As to the length of time, Defendant Smith approached Plaintiff while he was standing in line at the return desk and asked Plaintiff to accompany him to the back. It was at this point that the detention began. According to Defendants, the surveillance video shows Defendant Smith stopping Plaintiff at 3:20 p.m. *Id.* at 16. According to Plaintiff, the detention lasted approximately twenty to twenty-five minutes, which is not inconsistent with statements made by the police that the officers arrived at approximately 3:40 p.m. *Id.* at 16-17.

Defendants' Reply addresses the facts that relate to the manner and purpose of the detention. As to the manner of the detention, Defendants provide that Defendant Smith escorted the Plaintiff to "the back room, explained his suspicions, advised [Plaintiff] that the police had

14

been called, stayed in the room with [Plaintiff] and his children until the police arrived, and asked [Plaintiff] to sign a confession after the police arrived." Defendants' Reply at 14, *Titus v. Smith, et al*., No. 12-05041 (W.D.Va. Bankr. Aug. 11, 2012) ECF No. 15. During this encounter, another employee of Defendant Home Depot was present. *Id.* At no time was the Plaintiff or his family ever threatened or physically touched by Defendant Smith or the other employee. *Id.* As to the purpose of the detention, Defendants posit only that they "may certainly detain the suspect long enough to allow the police to arrive, who are much better equipped to investigate crimes than retail establishments." *Id.* at 15.

While Defendants have provided facts pertaining to the grounds, manner, timing, and purpose of the detention, Defendants have failed to provide any guidance or case law to guide this Court in determining that the first three elements were in fact reasonable as a matter of law. As such, this Court must determine whether reasonable people could disagree as to the reasonableness and purpose of Defendant Smith's actions. If reasonable people could disagree, looking only at Defendants' facts, then Defendants would not be entitled to a directed verdict and would fail to carry the burden of conclusively establishing the essential elements of their affirmative defense.

This Court finds that reasonable minds could differ as to the reasonableness and purpose of Defendant Smith's actions for the following reasons. First, reasonable people could disagree that Defendant Smith had reasonable grounds for detaining the Plaintiff. Although Plaintiff's actions may have been suspicious in isolation, Defendant Smith did not witness the Plaintiff enter the store and did not know where Plaintiff had been or what he had been doing prior to opening boxes in the faucet isle. Customers return or exchange items in numerous ways:   some leave the item at the return desk before meandering through the store; others carry the item with them while they shop; while others go to the counter to wait in line while someone else goes to get

15

the desired item. Without the whole picture, it is hard to distinguish the honest shoppers from the

dishonest. As such, the Court finds that reasonable people could disagree as to whether Defendant

Smith had reasonable grounds to detain the Plaintiff without witnessing Plaintiff enter the store.

Second, reasonable minds may disagree that the purpose of the detention was to

investigate whether or not the Plaintiff had in fact committed return fraud. Based on the

Defendants' own account of the detention, Defendant Smith did not question Plaintiff about the

events, never reviewed the surveillance video with Plaintiff, and only seemed interested in

securing Plaintiff's confession. Defendants' Reply at 14, *Titus,* No. 12-05041 ECF No. 15. While

Defendants are correct that the police may be more capable of investigating crimes than they are,

*id.* at 15, this does not mean that Defendants are incapable of beginning or conducting an

investigation. Defendants could have easily taken down Plaintiff's information, asked him

questions about his suspicious conduct, and reviewed the surveillance video with Plaintiff before

handing the investigation over to the police when they arrived. Based on the foregoing, the Court

finds that reasonable people could disagree as to whether Defendant Smith detained Plaintiff to

investigate the possible return fraud.[8]

Third, given the other circumstances surrounding the detention, reasonable people

might disagree that twenty to twenty-five minutes was a reasonable amount of time to detain the

Plaintiff. As Defendants recognized at hearing, reasonableness is context specific. Transcript of

Oral Argument at 25-26, *Titus,* No. 12-05041. As the Court stated previously, Plaintiff's actions

could be considered suspicious to an individual who did not have reason to know that Plaintiff was

---

[8]     The Merchant Exception is designed to shield merchants and their agents from liability for reasonable
mistakes made in attempts to protect their business from shoplifters and other unscrupulous individuals. While
application of the statute should be done so as to avoid hindsight bias, the interpretation of what the statute requires
should be done in such a way as to encourage merchants and their agents to seek the truth and get it right, not merely
detain and wait for the cavalry to arrive.

attempting to exchange an item he had purchased earlier in the day. Assuming arguendo that

Defendant Smith had reasonable grounds to stop and detain Plaintiff to investigate whether

Defendant's suspicions were meritorious, a reasonable duration of such a detention, given our

facts, would be long enough to allow Defendant Smith to review the surveillance video and

determine whether his suspicions were warranted. The duration of the detention could still be

reasonable beyond this investigatory period if, after reviewing the video, he believed his

suspicions were correct or if the video evidence was inconclusive. In this case, however,

Defendant Smith held Plaintiff for approximately twenty to twenty-five minutes, released Plaintiff

into police custody, and waited until the police had left the premises before ever attempting to

review the surveillance video, even though he had plenty of time to do so prior to releasing the

Plaintiff into police custody. In considering the context and circumstances surrounding Plaintiff's

detention, the Court finds that reasonable people could disagree as to whether a twenty to

twenty-five minute detention was reasonable.

      Based on any one of the foregoing reasons, this Court finds that reasonable minds

could disagree as to the reasonableness or purpose of Defendant Smith's actions. As reasonable

people could disagree, Defendants would not be entitled to a directed verdict and have, thus, failed

to conclusively establish the essential elements of their affirmative defense. Therefore, Defendants

have failed to carry their burden on their Motion regarding Plaintiff's false imprisonment claim

and, as such, this Court finds that Defendants' Motion should be denied as to this issue.

      Assuming, in the alternative, that reasonable people would not disagree about the

reasonableness or purpose of Defendant Smith's actions, the Court would still recommend

dismissal of Defendants' Motion. Plaintiff has provided the Court with several pieces of evidence

that call into question Defendants' portrayal of the evidence, as well as characterization of the

17

detention as reasonable within the meaning of the Merchant Exception. The Court finds that the following pieces of evidence, individually or together, create at least one genuine issue of material fact. Therefore, Defendants' Motion, as it relates to Plaintiff's false imprisonment claim, should be denied because Plaintiff has provided the Court with specific facts establishing a genuine issue for trial.

First, Plaintiff has presented the Court with information regarding Defendant Home Depot's internal Asset Protection policies. Plaintiff's Exhibit 4, *Titus,* No. 12-05041 ECF No. 13. According to Defendant Home Depot's policies, "Prior to making an apprehension, Asset Protection … must observe the subject enter the store without the merchandise in order to make a refund fraud apprehension." *Id*. at 1-4. There are no exceptions to this initial requirement for return fraud apprehension. *Id.* Based on this information, Plaintiff argues that a jury could find that Defendant Smith's detention of Plaintiff lacked reasonable grounds because, based on Defendant Home Depot's own policies, the detention should not have occurred. Plaintiff's Response at II.B.1.a., *Titus,* No. 12-05041 ECF No. 13. As the Court stated previously, customers return items in different ways; reasonable people could disagree as to whether or not reasonable grounds existed to detain the Plaintiff without witnessing him enter the store without the item. Therefore, consistent with the Court's previous findings, the Court finds that Plaintiff has provided the Court with facts that establish a genuine issue for trial.

Defendants argue, however, that "Home Depot's internal policies do not set the legal standard by which its actions are measured." Defendants' Reply at 13, *Titus,* No. 12-05041 ECF No. 15. The Court agrees. Finding that Defendant Home Depot's internal policies raise a material issue of fact, however, does not change the legal standard by which Defendants' conduct is measured. In order for the Merchant Exception to apply, Defendant Smith was required to have

18

reasonable grounds for detaining Plaintiff. Defendant Home Depot's internal policy, however, provides one view of what might be considered reasonable grounds, while Defendants, together, now argue that reasonable grounds existed for Defendant Smith to detain Plaintiff, simply because he witnessed Plaintiff open product prior to purchase. Defendants' Supporting Memorandum of Law at 15-16, *Titus,* No. 12-05041 ECF No. 5 ("surely reasonable grounds existed for Defendant Smith to detain Plaintiff"). The difference between Defendant Home Depot's internal policy and Defendants' litigation position shows that reasonable people could disagree as to what does or does not constitute appropriate grounds for detention. Based on the foregoing, the Court finds that Defendants' Motion should be denied as it relates to Plaintiff's false imprisonment claim. Plaintiff has carried his burden of presenting a genuine issue of material fact.

Second, Plaintiff has presented the Court with information regarding the criminal complaint filed against Defendant Smith in connection with his actions leading up to, during, and after the detention that lead to Plaintiff's false imprisonment claim. Plaintiff's Exhibit 1, *Titus,* No. 12-05041 ECF No. 13. Officer Henderson's report, that forms the basis of the criminal complaint, provides valuable insights from a neutral third party as to the reasonableness of Defendant Smith's actions, as well as his purpose in detaining the Plaintiff. With regards to the reasonableness of Defendant Smith's grounds for detaining Plaintiff, Officer Henderson's report is illustrative:

> Mr. Smith fabricated on how and where he observed Mr. Titus and his young children. From Mr. Smith's incorrect actions, he caused the police, at his request, to respond to the scene of a crime, when in fact no crime was committed due to Mr. Smith's incorrect observation tactics, which if he would have been correct. [sic] He would have realized that the item in question was brought into the store by Mr. Titus and family and not that Mr. Titus was attempting to commit refund fraud.

Plaintiff's Exhibit 1 at 2, *Titus,* No. 12-05041 ECF No. 13. Two pieces of this statement lead this Court to believe a genuine issue exists as to the reasonableness of Defendant Smith's grounds for

detaining Plaintiff. First, the Court notes the fact that Defendant Smith felt the need to inform

police that he had witnessed Plaintiff and his children enter the store without a faucet when, in fact,

Defendant Smith had not. *Id.* ("Mr. Smith stated that he watched a male subject; Scott W. Titus

and his two young children enter the store with no items in their hands and/or cart."). The Court

does not know why Defendant Smith lied to authorities regarding this fact, but he did and the Court

finds it telling. If witnessing Plaintiff enter the store was not important, why would Defendant

Smith have felt the need to fabricate the timing and existence of facts? Second, the police noted

that Defendant Smith's observation tactics were incorrect. *Id.* This fact is significant because the

use of correct or recognized observation tactics by a storeowner might lead a jury to find that,

although ultimately wrong about the customer's guilt, that storeowner may have had reasonable

grounds for detaining that customer on suspicion of return fraud. The Court finds, therefore, that

Officer Henderson's report creates a genuine issue as to the reasonableness of Defendant Smith's

grounds for detaining Mr. Titus. The Plaintiff has carried his burden and Defendant's Motion

should be denied as it relates to Plaintiff's false imprisonment claim.

       With regards to the purpose of the detention, Officer Henderson's report raises

questions as to Defendant Smith's motives in detaining Plaintiff and summoning the police to the

scene. The report states:

> Officers Tharp and Henderson witnessed Mr. Smith attempt to have Mr. Titus sign
> a statement that he committed a crime. Mr. Titus refused to sign the statement
> several times. With each time Mr. Smith began to get more aggressive and Mr.
> Titus was getting more upset and so were his children.

Plaintiff's Exhibit 1 at 2, *Titus,* No. 12-05041 ECF No. 13. As addressed previously, the Court

believes reasonable minds may disagree over whether Defendant Smith's purpose for detaining

Plaintiff was to investigate return fraud; the police's characterization of Defendant Smith's actions

only strengthens the Court's belief. There is a difference between investigating an event and

attempting to validate a pre-conceived belief or opinion. The police's characterization of

Defendant Smith's demeanor might suggest he was not attempting to determine what had

happened, but rather induce Plaintiff to validate what Defendant Smith already believed. The

possibility that a reasonable person could find that Defendant Smith lacked an investigatory

purpose is only bolstered by what Officer Henderson's report goes on to say. After witnessing

Defendant Smith attempt to secure a confession from Plaintiff, "Officer Tharp asked Mr. Smith to

review the security tape while the Officers were on scene. Mr. Smith refused, stating he was doing

his paperwork and was unable to review the tape at this time." *Id.* Defendant Smith's refusal to

review the security tape with Officer Tharp might also lead a reasonable person to believe that he

lacked an investigatory purpose. In the case of return fraud, there is little the police could do

without reviewing the tape because the crime is predicated on the suspect not bringing the item

into the store. Review of the security tape is, therefore, a large part of the investigation and was not

possible without Defendant Smith's help. The reluctance to watch the tape or the failure to make it

available to the officers could lead a reasonable person to conclude that Defendant Smith lacked a

desire to investigate or even aid in the investigation of Plaintiff's suspected return fraud. Based on

the facts as presented by Plaintiff, the Court finds that reasonable people could disagree as to

whether Defendant Smith's actions were taken with the purpose of investigating a possible return

fraud and, therefore, Defendants' Motion should be denied as it relates to Plaintiff's false

imprisonment claim.

Third, Plaintiff has provided the Court with the affidavit of its security expert

David L. Johnston, who has fifty years of experience in the security profession. Plaintiff's Exhibit

6, *Titus v. Smith, et al.*, No. 12-05041 (W.D.Va. Bankr. Aug. 11, 2012) ECF No. 13. Defendants

21

have not raised any objections to the Court's consideration of Mr. Johnston as an expert. The Court

is required to make all justifiable inferences in favor of the non-moving party, *News and Observer

Publishing*, 597 F.3d at 576, and, therefore, the Court finds that for purposes of this Motion, Mr.

Johnston's testimony should be given the weight and credibility due an expert in his field.

Although Mr. Johnston's report contains statements tangentially related to other

essential elements of the Merchant Exception, it primarily calls into question the reasonableness of

Defendant Smith's grounds for detaining the Plaintiff. Based on a thorough review of the case,

including the complaint, responses, depositions, and interrogatories, Plaintiff's expert concluded

"that reasonable ground/probable cause[9] was not present when Home Depot's Smith detained

Plaintiff, Titus. Hence, in my opinion, he should not have been detained or arrested on July 11,

2010." Plaintiff's Exhibit 6 at 6, *Titus,* No. 12-05041 ECF No. 13 (footnote added). Considering

the relative, yet appropriate persuasiveness of expert testimony, the Court finds that reasonable

people may disagree as to the reasonableness of Defendant Smith's grounds for detention in light

of uncontroverted expert testimony. Therefore, the Court finds that Plaintiff's expert testimony

creates a genuine issue of material of fact for trial. Defendants' Motion should be denied as it

---

[9]      Defendants have asserted that Plaintiff's expert has applied the incorrect legal standard in formulating his
opinion for this case. According to Defendants, reasonable ground in West Virginia is consistent with reasonable
suspicion, not probable cause. Defendants' Reply at 14, *Titus,* No. 12-05041 ECF No. 15. Defendants, however, have
provided no case law to support this position and W.Va. Code § 61-3A-4 is silent as to the applicable standard. The
Court has conducted a Westlaw search of West Virginia law and has found nothing to validate Defendants' claim that
reasonable ground is equivalent to reasonable suspicion under West Virginia law. The Court did find, however, that a
majority of states with statutes similar to West Virginia's Merchant Exception apply a probable cause standard, not a
reasonable suspicion standard. *See* Westlaw search, database = st-ann-all, search terms "shoplifting & merchant &
detain," (quotations and comma not part of search terms) as of 10/26/12. Of those states, Maryland, North Carolina,
South Carolina, and Virginia – West Virginia's sister-circuit states – all apply a probable cause standard. *See* MD
CODE ANN., CTS. & JUD. PROC. § 5-402 (West 2012); N.C. GEN. STAT. ANN. § 14-72.1(c) (West 2012); *Lynch v. Toys
R Us,* 375 S.C. 604 (S.C.App. 2007) (interpreting and applying S.C. CODE ANN. § 16-13-140 (2012)); and VA CODE
ANN. § 8.01-226.9 (West 2012). Based on the foregoing, Defendants' failure to provide any support for their assertion
leads this Court to find that the courts of West Virginia would most likely apply a probable cause standard, as opposed
to a reasonable suspicion standard. If, however, Defendants are correct, the Court would find that probable cause and
reasonable suspicion are not mutually exclusive standards, given that this Court is required to give all reasonable
inferences to Plaintiff, the non-movant. Such a finding would allow the Court to reach the same conclusion that Mr.
Johnston's expert testimony creates a genuine issue of material fact for trial.

relates to Plaintiff's false imprisonment claim.

Based on the totality of the foregoing analysis, there are several different ways in which the Court reaches the same conclusion: Defendants' Motion should be denied as it relates to Plaintiff's false imprisonment claim. In light of these conclusions, the Court finds and recommends that Defendants are not entitled to judgment as a matter of law on their affirmative defense to Plaintiff's false imprisonment claim and, therefore, Defendants' Motion should be denied as it relates to that theory of liability.

<u>Intentional Infliction of Emotional Distress</u>

Defendants' Motion asks this Court to find that Plaintiff has failed to make out a prima facie case for intentional infliction of emotional distress ("IIED") and that, therefore, Defendants are entitled to judgment as a matter of law. Defendants' Memorandum of Law at 17-18, *Titus,* No. 12-05041 ECF No. 5. In *Travis v. Alcon Laboratories, Inc.*, the Supreme Court of Appeals of West Virginia provided the Southern District of West Virginia with a summation of IIED law in West Virginia. Under West Virginia law, a plaintiff must establish four elements to succeed on a claim for IIED.

> It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Laboratories, Inc.*, 202 W.Va. 369, 375 (W.Va. 1998). Since defendants have moved for summary judgment on plaintiff's IIED claim, the remainder of this subsection will address whether or not Plaintiff has made an adequate showing of the essential elements of its claim, as well as whether a genuine issue of material fact exists for trial.

As an initial matter, the Court is required to determine if the conduct in question may be considered legally outrageous before the trier of fact is permitted to determine if the conduct is in fact outrageous. *Id.* at 378. In its certified question ruling, the court in *Travis* explained that outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," but rather encapsulates conduct that is "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." *Travis*, 202 W.Va. at 375 (quoting *Tanner v. Rite Aid of West Virginia, Inc.*, 194 W.Va. 643 (W.Va. 1995); *see also Hatfield v. Health Management Assoc. of West Virginia*, 223 W.Va. 259, 268 (W.Va. 2008) (upholding a trial court's grant of summary judgment when plaintiff failed to show that defendant had ridiculed, harassed, verbally abused plaintiff, or had made any derogatory or inappropriate statements regarding her employment or termination).

In support of a finding of outrageousness, Plaintiff has presented the Court with several pieces of evidence, which taken together, lead this Court to find that Defendants' conduct was legally outrageous. First, Plaintiff has provided facts showing that he was held on incorrect grounds and against his will for twenty to twenty-five minutes during which the intensity of the inquiry escalated. Plaintiff's Exhibit 1 at 2, *Titus,* No. 12-05041 ECF No. 13. Additionally, Plaintiff has provided the Court with facts showing that he was threatened with arrest, told he needed to provide for his children's welfare, and was repeatedly told to sign a forced confession. Furthermore, all of this was happening in front of Plaintiff's young children, one of whom was visibly upset and crying over the incident. Plaintiff's Exhibit 3 at Interrogatory 4, *Titus,* No. 12-05041 ECF No. 13. Lastly, all of this occurred because of the allegedly incorrect and criminally indifferent tactics employed by Defendant Smith. Plaintiff's Exhibit 1 at 2, *Titus,* No. 12-05041 ECF No. 13.

24

In addition to its summation of the general standard of outrageousness, the *Travis* Court considered other factors that might weigh in favor of an outrageousness determination. One such factor was whether the defendant abused a position or relationship with the plaintiff that "gave the defendant actual or apparent authority over the plaintiff or power to affect the plaintiff's interests." *Travis*, 202 W.Va. at 376. (citing cases considering employer-employee relationship). When a defendant abuses such power or such a relationship, the conduct is more likely to be considered outrageous. In the instant case, both Defendants were in a position of power over Plaintiff and his interests. Defendant Smith's power was evident in that he called the police, attempted to secure a forced confession, and fabricated parts of a story, which led to further investigation by the police. Plaintiff's Exhibit 1, *Titus,* No. 12-05041 ECF No. 13. In addition to Defendant Smith's actions, Defendant Home Depot told Plaintiff that it believed he was guilty, but was not pressing charges at this time. Furthermore, Defendant Home Depot lied to Plaintiff's wife about the preservation of evidence when Plaintiff's wife requested that a copy of the surveillance tape be preserved.[10] Plaintiff's Exhibit 3 at Interrogatory 4, *Titus,* No. 12-05041 ECF No. 13. Based on the information provided by Plaintiff, the Court finds that the tactics employed and actions taken by Defendants could be classified as an abuse of the power afforded by their position relative to the Plaintiff.

In light of the evidence presented by the Plaintiff to support a finding that Defendants' conduct was legally outrageous, as well as the evidence that Defendants abused or at least attempted to abuse their relative power over the Plaintiff, the Court finds that Defendants' conduct may be considered legally outrageous. The Court also finds that reasonable people could

---

10      Defendant Home Depot informed Plaintiff's wife that a copy of the surveillance video had already been saved, yet it had not and the one that was finally saved and delivered to authorities was not a complete copy of the day's events. Plaintiff's Exhibits 1 and 3, *Titus,* No. 12-05041 ECF No. 13.

differ on whether or not Defendants' conduct was in fact outrageous. Based on the foregoing, Plaintiff has presented the Court with a genuine issue of material fact. Therefore, as long as Plaintiff has made an adequate showing of the other three elements of his IIED claim, Defendants' Motion, as it relates to Plaintiff's IIED claim, should be denied.

Plaintiff must also adequately show that Defendants' conduct was intentional or reckless, that such conduct was the cause of Plaintiff's severe emotional distress, and that such distress was so severe that no reasonable person could be expected to endure it. *Travis*, 202 W.Va. at 378-80. With regard to these three elements, Defendants have only challenged the severity of Plaintiff's distress.[11] Although Defendants have not challenged the other two elements, the Court finds that Plaintiff's evidence adequately establishes their existence. Initially, Plaintiff has shown that Defendant Smith's conduct was designed to illicit a confession by means of intimidation and distress. *See* Plaintiff's Exhibit 1, *Titus,* No. 12-05041 ECF No. 13; and Defendant's Exhibit A at 10-11, *Titus,* No. 12-05041 ECF No. 5. Additionally, Plaintiff has shown that Defendant Smith's conduct would be appropriately characterized as criminally indifferent, Plaintiff's Exhibit 1, *Titus,* No. 12-05041 ECF No. 13; a standard of mental culpability greater than recklessness. Lastly, the record demonstrates a sufficient factual connection between Defendants' conduct and Plaintiff's distress. Plaintiff's Exhibit 3, *Titus,* No. 12-05041 ECF No. 13.

With regards to the severity of Plaintiff's distress, Plaintiff has presented evidence of fright, shock, humiliation, shame, embarrassment, an inability to sleep, as well as physical manifestation of these feelings when he broke down in his vehicle outside Defendant Home Depot's establishment. Plaintiff's Exhibit 3 at Interrogatory 4, *Titus,* No. 12-05041 ECF No. 13.

---

11    Defendants have not conceded that Plaintiff has adequately established the other elements; rather, Defendants have chosen to rely on their arguments regarding outrageousness and severity. Defendants' Memorandum of Law at 18 note 3, *Titus,* No. 12-05041 ECF No. 5.

Although such characteristics must be extreme to trigger liability, the *Travis* Court stated that severe emotional distress may include "mental suffering and anguish, shock, fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Travis*, 202 W.Va. at 380. Plaintiff's evidentiary showing is consistent with the mental states the *Travis* Court considered to be within the class of emotions that could trigger liability for severe emotional distress. Furthermore, the court in *Travis* explained that determining a defendant's state of mind and the reasonableness of plaintiff's reaction are considerations normally left for the trier of fact, not the judge. *Id.* Based on the foregoing, the Court finds that Plaintiff has presented facts sufficient to support a prima facie showing of severe distress. The various emotions exhibited by Plaintiff are consistent with those emotions outlined by the Court in *Travis*. Furthermore, this Court agrees with the *Travis* Court that this type of factual determination is one more suited for the trier of fact rather than this Court on summary judgment.

Based on the foregoing information presented by the Plaintiff, the Court finds that Plaintiff has adequately shown that Defendants' conduct was outrageous, that Defendants acted with intent and criminal indifference, that Defendants' actions were the causal link to Plaintiff's distress, and that the emotional distress suffered by plaintiff could be considered severe by a reasonable trier of fact. Furthermore, Plaintiff has shown that reasonable people could disagree as to whether Defendants' conduct was in fact outrageous, as well as whether or not Plaintiff's distress was so severe that no reasonable person could be expected to bear it. Having established a prima facie case for IIED and genuine issues of material fact, Plaintiff has carried his burden. Therefore, the Court finds that Defendants are not entitled to judgment as a matter of law on Plaintiff's IIED claim and recommends that Defendants' Motion be denied as it relates to that claim.

27

## Punitive Damages

West Virginia tort law provides that a jury may award punitive damages if "gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it …." *Alkire v. First Nat. Bank of Parsons*, 197 W.Va. 122, 129 (W.Va. 1996). This general provision for punitive damages, however, has been limited by the West Virginia courts in cases involving intentional infliction of emotional distress. In such cases, the availability of punitive damages turns on whether the plaintiff has shown "a serious physical or mental condition requiring medical treatment, counseling or the like …." *Tudor v. Charleston Area Medical Center, Inc.*, 203 W.Va. 111, 131 (W.Va. 1997). When such a condition is not shown, compensatory damages for intentional infliction of emotional distress encompass punitive damages; an additional award for such would result in double compensation. *Id.* at 131-32.

Defendants' Memorandum appears to concede that punitive damages are available for Plaintiff's false imprisonment and intentional infliction of emotional distress claims if the standard announced by *Alkire* is met; yet Defendants' Reply appears to argue that Plaintiff is not entitled to any punitive damages at all under the authority of *Tudor*. Defendants' Reply at 17, *Titus,* No. 12-05041 ECF No. 15 ("Titus's own authority (which relied on an interpretation of <u>Tudor</u>) precludes him from recovering punitive damages in this case."). Under the summary judgment standard, all justifiable inferences are to be determined in favor of the non-moving party. *News and Observer Publishing*, 597 F.3d at 576. With this in mind, the Court finds that the position taken by Defendants in their Memorandum and Reply should be interpreted as conceding that Plaintiff is permitted to recover punitive damages on its false imprisonment claim if cause for such is shown, but should be denied punitive damages on its intentional infliction of emotional

28

distress claim under *Tudor*.

Regarding Plaintiff's false imprisonment claim, the Court concludes that Plaintiff has alleged facts sufficient for a trier of fact to award punitive damages. The court in *Alkire* considered a similar factual situation and found that the record provided sufficient evidence for the question of punitive damages to go to the jury. *Alkire*, 197 W.Va. at 129 (reviewing an appeal from a trial court's granting of a motion for judgment notwithstanding the verdict). The facts of *Alkire* involved deceitful conduct by the defendants, attempts to thwart investigation, and failures to notify plaintiff of existing evidence. *Id*. at 129-30. There are similarities between *Alkire* and this case that would allow for a similar result.

In addition, unlike the plaintiff in *Alkire,* Mr. Titus has presented the Court with evidence that Defendant Smith's conduct was thought to be so egregious by local authorities that they charged him criminally for his actions leading up to, resulting in, and following Plaintiff's false imprisonment. Based on these facts, Plaintiff has shown that Defendant Smith's actions were taken with a criminal indifference to civil obligations; a culpability level expressly provided for in *Alkire*'s formulation of West Virginia's punitive damages standard. Therefore, the Court finds that Defendants' Motion should be denied as to the availability of punitive damages for Plaintiff's false imprisonment claim.

Regarding Plaintiff's intentional infliction of emotional distress claim, the Court concludes that Defendants are entitled to summary judgment as to the availability of punitive damages. Under *Tudor*, punitive damages for intentional infliction of emotional distress are only available if physical trauma or concomitant medical or psychiatric proof of emotional or mental trauma is present. *Tudor*, 203 W.Va. at 131-32. Plaintiff has failed to allege facts exhibiting physical trauma or medical or psychiatric proof of emotional or mental trauma. According to

29

Plaintiff's deposition, he has not even sought medical or psychiatric help for his condition, nor has

he identified any physical trauma associated with such. Plaintiff's Exhibit 3 at Interrogatory 4 and

20, *Titus,* No. 12-05041 ECF No. 13. As such, there is no dispute as to a material fact and

Defendants' are entitled to judgment as a matter of law on the claim of punitive damages for

intentional infliction of emotional distress under the legal standard announced by *Tudor*.

**REPORT AND RECOMMENDATION**

Based on record of this case and the arguments put forth by the parties at oral

argument, the Court recommends that the United States District Court for the Western District of

Virginia grant Defendants' Motion for Summary Judgment as it relates to the availability of

punitive damages for Plaintiff's intentional infliction of emotional distress claim, but deny

Defendants' Motion as to all other issues raised.

After docketing this Report and Recommendation in the record in this Adversary

Proceeding, the Bankruptcy Court Clerk shall on that day mail a copy of this report to the

following persons at the addresses noted:   counsel for the Plaintiff:   David Connerley Nahm, 92

North Liberty Street, Harrisonburg, VA 22802; F. Samuel Byrer, P.O. Box 597, Charles Town,

WV 25414; and Peter A. Pentony, P.O. Box 597, Charles Town, WV 25414; counsel for the

Defendants: Brian A Cafritz, 901 Moorfield Park Drive, Suite 200, Richmond, VA 23236, Wayne

Barry Montgomery, 901 Moorfield Park Drive, Suite 200, Richmond, VA 23236, and Eric D.

Andrew, 923 Anchor Drive, Roanoke, VA 24012; and Chapter 13 Trustee, Herbert L. Beskin, P.O.

Box 2103, Charlottesville, VA 22902. The Bankruptcy Court Clerk shall note on the Bankruptcy

Court docket the date of mailing. Objections to this Report shall be filed with the Bankruptcy

Court for the Western District of Virginia, pursuant to Rule 9033, within fourteen (14) days of the

date of mailing of this Report.   After the time period for filing objections has passed, the

30

Bankruptcy Court Clerk shall submit this report to the Clerk for the District Court for the Western

District of Virginia for filing in that Court.


Dated: December 3, 2012

_____
Rebecca B. Connelly
U.S. Bankruptcy Judge